IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| Plaintiff, ) | |
| ) | No 4:21 CR 150 SEP |
| v. ) | |
| ) | |
| MARK DRISCOLL, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Defendant Mark Driscoll, by and through his attorney, Teneil Kellerman and hereby requests the Court to enter a sentence of probation, or in the alternative a sentence of no more than twenty-four months to be followed by five years of supervised release. In support of this request, Defendant states the following:

**A. Nature and circumstances of Mr. Driscoll's offense and his history and characteristics**

In March of 2017, law enforcement officers began a child pornography investigation using publicly available file sharing networks. The officers located a video file which contained child pornography. They were able to obtain an IP address which had the requested video available. After issuing a subpoena to AT&T for the IP address, they found that the IP address was registered for service at 5169 Kensington Avenue in the City of St. Louis. That address was a two-family flat and Mr. Driscoll resided in the upstairs apartment along with Mr. James Graham (indicted with similar charges under a separate case number).

Three months later, the officers visit the address and speak with James Graham who admits to downloading images and videos of child pornography, but minimized his involvement

in saying that the considered it "art."  On June 21, 2017, after obtaining a search warrant, Mr. Driscoll was arrested and was cooperative with law enforcement.  Mr. Driscoll gave a detailed interview wherein he admitted his culpability and actually asked the officers what the treatment options were if he could not pay for them.  He did not try to minimize his conduct in any way.  Mr. Driscoll was then released pending application for a warrant.

Mr. Driscoll did not hear anything further regarding this arrest or any charges prior to his arrest on March 26, 2021.  In fact, the indictment was not handed down until March 3, 2021.  In the almost four years since the original arrest, no additional criminal activity on the part of Mr. Driscoll has occurred.  The discovery in the case showed that his roommate, Mr. Graham had possessed 77,124 images and 75 videos of child pornography.  In stark contrast, Mr. Driscoll possessed 1,420 images and 24 videos of child pornography.  Another fact to consider is that according to the most recent Commission report to Congress, in the fiscal year 2019, non-production child pornography offenses involved a median number of 4,265 images, with some offenders possessing and distributing millions of images and videos.[1]

Not only has Mr. Driscoll been living his life within the confines of the law since his original June 2017 arrest, over three and a half of those years he wasn't even under supervision.  Following his March 26, 2021 arrest, he was detained for about two months and shuttled to various jails until his release in this district.  Since his release on May 28, 2021, Mr. Driscoll has been complaint with the terms of his pre-trial supervision, including the home detention electronic monitoring.  Mr. Driscoll's only prior criminal history includes a bad check charge in 1998 for which he received a suspended imposition of sentence and successfully completed the two year period of probation.

---

[1] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf - see page 4, Key Finding number 1.

### B. The applicable guidelines do not serve their intended purpose as a matter of policy.

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, id. at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under 18 U.S.C. §3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the 3553(a) factors," "make and individualized assessment based on the facts presented," *id*. at 49-50, and explain how the facts relate to the purposes of sentencing. *Id*. at 53-60. The Court's "overarching" duty is to '"impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Pepper v. United States*, 562 U.S. 473, 493 (2011).

A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of the Court to disagree with a guideline as a matter of policy. Just as other Courts have disagreed with the prior guidelines related to the crack/cocaine disparity, so can this Court disagree with the guidelines' treatment of possession of child pornography. This Court may thus properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, see *Kimbrough*, 109-10, consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely to "reflect a rough approximation of sentences that might achieve §3553(a)'s objectives." *Id*

.

### C. The Sentencing Commission's Report to Congress

In 2013, the Sentencing Commission released a report to Congress on the child pornography guidelines for non-production offenders.[2] *See U.S. Sentencing Commission, Report to Congress: Federal Child Pornography Offenses* (2012) hereinafter referred to as the "2012 Child Porn Report." The Commission explained that it compiled the report in large part due to the increasing rate of below-guideline sentences for offenders sentenced under USSG §2G2.2, pursuant to its statutory duty to 'consider whether the guidelines are in need of revision in light of feedback from judges as reflected in their sentencing decisions," *id*. at ii, and because "as a result of recent changes in the computer and internet technologies that typical non-production offenders use, the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." *Id*. at ii, 323. Even in 2012, the enhancements for computer use along with the type and volume of images were applying to most offenders instead of differentiating among offenders. *Id*. at iii, xi, 209, 323.  In 2012, the Commission asked Congress to enact legislation to provide it authority to amend the guidelines that "were promulgated pursuant to specific congressional directives or legislation directly amending the guidelines." *Id*. at xviii, 322.

Perhaps not surprising, Congress has not followed any such recommendation.  In June of 2021, the Commission issued an update to the 2012 Child Porn Report.[3] *See U.S. Sentencing Commission, Report to Congress: Federal Sentencing of Child Pornography- Non-Production Offenses* (2021), hereinafter referred to as the "2021 update to Child Porn Report."  In the 2021

---

[2] U.S. Sentencing Commission Report to Congress: Federal Child Pornography Offenses (2012) available here: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (last visited on 11/23/21).
[3] U.S. Sentencing Commission, Report to Congress: Federal Sentencing of Child Pornography- Non-Production Offenses (2021) available here: https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf (last visited on 11/23/21)

update, the Commission noted that to date, Congress had not implemented the Commission's statutory or guideline recommendations from the 2012 report. *2021 update to Child Porn Report*, p 3.  As a result, judges continued to sentence most non-production offenders below the guideline ranges. *Id* at 3.  The 2021 update found that in the fiscal year 2019, "four of the six enhancements – accounting for a combined 13 offense levels - cover conduct that has become so ubiquitous that they now apply in the vast majority of the cases sentenced under §2G2.2." *Id* at 4, 19.  In fact, "over 95% of non-production child pornography offenders received enhancements for use of a computer and for the age of the victim." *Id* at 4, 19.  The enhancements for images depicting sadistic or masochistic conduct or abuse of an infant or toddler applied in 84% of the cases and having 600 or more images applied in 77.2% of the cases.  *Id* at 19.  The Commission also found that sentencing disparities among similarly situated non-production offenders have become increasingly pervasive. *Id*. at 7.  It found that sentences for 119 similarly situated possession offenders ranged from probation to 228 months though the offenders had the same guideline calculation through the application of the same specific offense characteristics and criminal history category. *Id*. at 7.   The 2012 and 2021 update show that the current guidelines for non-production child pornography offenses do not differentiate between the type of offenders since the enhancements apply in the vast majority of typical cases and have led to incredibly disparate sentences for similarly situated defendants.  Both of these results run completely contrary to §3553(a)'s goals to consider the facts of the case and avoid sentencing disparity.

    **D.  Requested Sentence**

    Mr. Driscoll asks this Court to impose a sentence of probation, or in the alternative a sentence of no more than twenty-four months to be followed by five years of supervised release with the conditions that he register as a sex offender and undergo any treatment deemed

necessary by the Probation Officer. In the event that the Court does not grant Mr. Driscoll's objections to the six points for use of a computer and material that portrays sadistic or masochistic conduct, the advisory guideline range would be 97 – 121 months in prison. The sentence requested by Mr. Driscoll is sufficient, but not greater than necessary to serve the sentencing goals under §3553(a).

### Need for Just Punishment in Light of the Seriousness of the Offense, §3553(a)(2)(A)

Mr. Driscoll recognizes the great harm inflicted on the victims depicted in the images he possessed. He understands that he needs psychological treatment and is willing to participate in any treatment available. However, when looking at the seriousness of this offense in comparison with some other offenses, it is important to note that the same offense level of 33 (prior to the acceptance of responsibility reduction which is likewise available to the other offenses) can be found in the following non-exhaustive list of offenses:

- Conspiracy or Solicitation to Commit Murder, see §2A1.5
- Assault with Intent to Commit Murder, see §2A2.1
- Criminal Sexual Abuse resulting in more than serious but less than permanent bodily injury, see §2A3.1
- Kidnapping, see §2A4.1
- Rob a bank while discharging a firearm and causing serious bodily injury, see §2B3.1

Mr. Driscoll must register as a sex offender, with the publication of that information to the community and his friends and neighbors. The courts have recognized that collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. United States v. Garate, 543 F.3d 1026, 1028 (8th Cir. 2008). The guidelines also state that with sex offenses, the statutory maximum term of supervised release is recommended, which in this case is life. This fails to differentiate between offenders like Mr. Driscoll who possessed child pornography and the actual rapists and abusers

who perpetrated the violence against the child.  A five-year term of supervised release is sufficient but not greater than necessary to meet the sentencing goals of §3553(a).

### Need for Adequate Deterrence, §3553(a)(2)(B)

A lengthy prison sentence does not in any way lend itself to deterring the production or dissemination of child pornography.  This is because the production and dissemination are widespread, international problems.  The Commission acknowledges that there is no social science research supporting a theory that criminal punishments "have affected commercial or non-commercial 'markets' since the advent of the internet and Peer to Peer file-sharing." *2012 Child Porn Report* at 98.

### Need for Incapacitation, §3553(a)(2)(C)

Mr. Driscoll was able to conform his behavior to the law in the nearly four-year period from his original arrest until his arrest in 2021.  He was able to do so without any supervision.  After his 2021 arrest, he has also been amenable to supervision in that he has not violated his pre-trial release even though he is subject to the strict confines of home detention.  It is clear that a custodial sentence is not necessary to prevent Mr. Driscoll from reoffending.

### Need for Medical Care and Correctional Treatment in the Most Effective Manner, §3553(a)(2)(D)

Mr. Driscoll has made it clear that he desires psychological treatment to address his mental health concerns related to seeking out child pornography.  The services available to him if he were given probation would be able to be treated without the need for a custodial sentence.  However, if the Court disagrees and sentences him to prison, Defendant is requesting a judicial recommendation that he be placed in a facility with a non-residential sex offender treatment program as close to Idaho as possible, which we believe would be FCI Englewood.

### Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants, §3553(a)(6)

In fiscal year 2020, only 30.7% of defendants sentenced under §2G2.2 nationwide received a sentence within the guideline range, and 68.2% received a sentence below the

guideline range.[4] In fiscal year 2020, 100% of defendants sentenced under §2G2.2 with Criminal History Category I, in the Eastern District of Missouri received a sentence below their guideline range.[5]

### Requests for Judicial Recommendations in the event of a custodial sentence

Mr. Driscoll requests that the Court make two recommendations regarding his placement in the Bureau of Prisons in the event of a custodial sentence.  The first is a recommendation for placement in a facility with the non-residential sex offender treatment program as close to Idaho as possible, which we believe to be FCI Englewood.  This placement would facilitate the treatment that he desires and needs related to his prior actions.  The second is a recommendation for placement in the RDAP program based on his history of using marijuana on a regular basis. This recommendation is also voiced by probation in paragraph 60 of the Pre-Sentence Investigation Report.

### Request for Self-Surrender in the event of a custodial sentence

Mr. Driscoll requests the Court allow him to self-surrender in this case.  Mr. Driscoll has not had any bond violations in the six and a half months that he has been on pre-trial release. As the Court is likely aware, whether a defendant is allowed to self-surrender is considered by the Bureau of Prisons in their Security Designation.  Self-Surrender results in three (3) less points in the overall classification calculation.

---

[4] 2020 Sourcebook of Federal Sentencing Statistics, table 32 available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2020/Table32.pdf (last visited 11/23/21)

[5] See attached chart generated using the Commission Interactive Data Analyzer which can be found at https://ida.ussc.gov/analytics/saw.dll?Dashboard (last visited 11/23/21)

**Conclusion**

For the reasons stated above, Mr. Driscoll respectfully requests that this Court grant his request for a departure and/or variance and impose a sentence of probation or in the alternative a sentence of no more than twenty-four (24) months incarceration to be followed by five (5) years of supervised release.

Respectfully submitted,

*/s/ Teneil Kellerman*
Teneil Kellerman, #52971MO
GROWE EISEN KARLEN
120 S. Central Ave., Ste 150
St. Louis, MO  63105
314-725-1912/ fax 314-261-7326
teneil@groweeisen.com
ATTORNEY FOR DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 23rd day of November, 2021, the foregoing was electronically filed with the Clerk of Court, therefore to be served electronically by operation of the Court's electronic filing system upon all parties.

*/s/ Teneil Kellerman*